UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MARCEL BOYD,<br><br>       Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA, Western Division at Pennington County Jail, in individual capacity; ISIAH CROW, Oglala Public Safety at Pennington County, in individual and official capacity; and OGLALA PUBLIC SAFETY, Oglala Public Safety at Pennington County, in individual and official capacity,<br><br>       Defendants. | 5:25-CV-05012-RAL<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff Marcel Boyd, an inmate at the Pennington County Jail, filed a pro se civil rights lawsuit. Doc. 1. Boyd filed a motion for leave to proceed in forma pauperis and provided his prisoner trust account report. Docs. 2, 3.

I. **Motion for Leave to Proceed In Forma Pauperis**

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) The average monthly deposits to the prisoner's account; or
> (B) The average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Boyd reports an average monthly balance of $7.72 and average monthly deposits of $26.91. Doc. 3. Based on this account information, the Court grants Boyd's motion for leave to proceed in forma pauperis, Doc. 2, and waives his initial partial filing fee because the initial partial filing fee would be greater than his current balance. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

To pay his filing fee, Boyd must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Id. The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Boyd's institution. Boyd remains responsible for the entire filing fee, as long as he is a prisoner. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.     1915A Screening

### A.     Factual Background

Boyd filed a § 1983 civil rights action alleging violations of his Fourth and Fifth Amendment rights, as well as violations of the Indian Civil Rights Act (ICRA). Doc. 1. Boyd sues the United States of America, Western Division at Pennington County Jail in its individual capacity for "Threating, forcefully 4th Amendment warrant less search 6th Amendment Poor Investigation Double Jeopardy Clause Civil Rights." Id. at 2 (spelling and grammar errors in original). Liberally construing Boyd's complaint, this Court understands him to be asserting claims against both the United States and Pennington County Jail. Boyd also sues "Oglala Public Safety" which this Court understands to be the Oglala Sioux Tribe Department of Public Safety (OSTDPS), and one of its employees, Isiah Crow. Id. Boyd sues both the OSTDPS and Crow in their individual and official capacities. Id.

While Boyd's complaint is largely comprised of general statements of law, the few factual statements he provides seem to imply that his claims arise from his arrest and subsequent criminal charge for possession of a firearm in a pending District of South Dakota case, United States v. Boyd, 5:24-CR-50140-CCT. Id. at 3, 6, 11. While he does not provide specific factual allegations, Boyd claims that his Fourth Amendment rights were violated when a warrantless search and seizure occurred, and when he was "never showed warrant never read Marandom rights force. Entry broke the door down, made connect with Law never possed Fire Arm never had knowledge of Fire Arm bean detained placed in handcuffs mased multiply times never produced body cam." Id. at 5 (spelling and grammar errors in original). This description of events, coupled with Boyd's statement that he was "physically restrained or locked up handcuffs[,]" appears to be an assertion

of a Fourth Amendment excessive force claim as well. Id. at 8. As a result, Boyd alleges that he has suffered mental anguish and emotional distress. Id. at 4, 8.

Boyd also claims that his Fifth Amendment rights were violated, but provides no facts to support this assertion other than citing the case number for his firearm possession charge, 5:24-CR-50140-CCT. Id. at 6. Under the "Supporting Facts" section of his complaint, he provides a description of the Double Jeopardy Clause. Id. Boyd alleges that this violation resulted in "Mental Illness, distress Anxiety, Bipolar Mental Anguished[.]" Id. (spelling and grammar errors in original).

Additionally, Boyd appears to assert violations of ICRA's First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment analogues, as well as ICRA's Ex Post Facto Clause. Id. at 9–10. Boyd does not provide any factual support for these assertions, and instead summarizes these specific ICRA provisions, codified at 25 U.S.C. § 1302(a)(1–10). Id. This Court liberally construes Boyd's complaint to be asserting violations of each listed ICRA provision. Id.

As relief, Boyd requests a pardon and that this Court dismiss the possession of a firearm charge against Boyd in 5:24-CR-50140-CCT. Id. at 11. Additionally, he requests monetary damages "for days incarcerated also mental Anguished[.]" Id. (grammar errors and capitalization in original). Boyd also states that he would like to "proceed with law suit against public defender Office Federal having me sign Destroy of fire Arm Double jeopard clause." Id. (spelling and grammar errors in original).

**B.     Legal Standard**

The court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007);

Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (citations omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the Court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess the claims under 28 U.S.C. § 1915A.

  C.  **Legal Analysis**

    1.  **Claims Against the United States and Pennington County Jail**

Boyd names as a defendant the "United States of America" and fills in the blanks on his complaint to provide the place of employment as "Western Division at Pennington County Jail."

Doc. 1 at 2. Liberally construing Boyd's complaint, this Court understands Boyd to be asserting claims against both the United States and Pennington County Jail.

Beginning with Boyd's claims against the United States, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (citing Loeffler v. Frank, 486 U.S. 549, 554 (1988)). Because Boyd does not allege any facts to suggest a waiver of sovereign immunity, his claims against the United States of America are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

As for Boyd's claims against Pennington County Jail, "county jails are not legal entities amenable to suit." Owens v. Scott Cnty. Jail, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam); see also De La Garza v. Kandiyohi Cnty. Jail, 18 F. App'x 436, 437 (8th Cir. 2001) (per curiam); Ketchum v. City of West Memphis, 974 F.2d 81, 82 (8th Cir. 1992). Because Pennington County Jail is not a suable entity under § 1983, see Bell v. Mattson, 4:24-CV-04179-KES, 2025 WL 1249453, at *5 (D.S.D. Apr. 30, 2025), Boyd's claims against Pennington County Jail are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2. Claims Against OSTDPS

Boyd sues the OSTDPS under § 1983. Doc. 1. The OSTDPS is a tribal agency that enforces the Oglala Sioux Tribe's criminal laws and is engaged in exercising inherent tribal sovereignty functions.[1] See Roemen v. United States, 463 F. Supp. 3d 990, 1003–04 (D.S.D. 2020)

---

[1] On its website, the OSTDPS states that its mission is to "use and enforce the sovereign rights and authorities of the Oglala Sioux Tribe, including but not limited to those afforded to the Tribe by its inherent sovereignty[.]" To accomplish this goal, the OSTDPS "work[s] to maintain law and order and peace and social order among all of the people living on or present upon the Pine Ridge Indian Reservation." Our Mission, Oglala Lakota Nation, https://ostdps.org/#:~:text=OSTDPS%20enforces%20the%20sovereign%20rights%20and%20au

(discussing Whiting v. Martinez, 15-CV-3017-RAL, 2016 WL 297434 (D.S.D. Jan. 22, 2016)). As the law enforcement agency for the Oglala Sioux Tribe, the OSTDPS functions as an "arm of the tribe[.]" Stathis v. Marty Indian Sch. Bd. Inc., 560 F. Supp. 3d 1283, 1291, 1294 (D.S.D. 2021). Because the OSTDPS is an "arm of the tribe," a suit against the OSTDPS essentially is a suit against the tribe itself.

"The Supreme Court has long distinguished Indian tribes from territories and states." Nygaard v. Taylor, 602 F. Supp. 3d 1172, 1190 (D.S.D. 2022). See also Michigan v. Bay Mills Indian Cmty., 572 U.S. 782, 788 (2014). Tribes, as a general rule, are not state actors. Archambault v. United States, 641 F. Supp. 3d 636, 648 (D.S.D. 2022). As such, § 1983 suits are inappropriate vehicles to bring claims against tribes. See Stanko v. Oglala Sioux Tribe, 916 F.3d 694, 696 (8th Cir. 2019) ("The district court properly rejected Stanko's contention that Congress expressly authorized § 1983 suits against Indian tribes."); see also Will v. Mich. Dept. of State Police, 491 U.S. 58, 67 (1989) (reasoning that "in enacting § 1983, Congress did not intend to override well-established immunities or defenses under the common law").

Even if Boyd could bring suit against OSTDPS under § 1983, his claims against OSTDPS are barred by sovereign immunity. As stated above, OSTDPS is an arm of the tribe, entitled to sovereign immunity. Stathis, 560 F. Supp. 3d at 1293. Sovereign immunity bars suits "absent a clear waiver by the tribe or congressional abrogation." Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509 (1991) (citation omitted). "Any waiver of tribal sovereign immunity must be 'unequivocal.'" Wilson v. Dep't of Interior, 5:22-CV-5094,

---

thorities%20of,rights%20and%20status%20of%20the%20Oglala%20Sioux%20Tribe (last visited Oct. 28, 2025).

2023 WL 4868415, at * 2 (D.S.D. July 31, 2023) (quoting Rupp v. Omaha Indian Tribe, 45 F.3d 1241, 1244 (8th Cir. 1995)).

Here, Boyd alleges nothing to suggest that Congress has authorized Boyd's suit or that the Oglala Sioux Tribe has waived sovereign immunity. Thus, "absent a clear waiver by the tribe or congressional abrogation[,]" sovereign immunity bars Boyd's claims against OSTDPS. Okla. Tax Comm'n, 498 U.S. at 509. Thus, Boyd's claims against the OSTDPS are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2).

### 3. Claims Against Isiah Crow

Boyd references Defendant Crow only once in his complaint, when he names him as a defendant sued in both his official and individual capacity and provides Crow's place of employment as "Oglala Public Safety[.]" Doc. 1 at 2. Crow is not mentioned again in Boyd's complaint, and Boyd provides no other information as to why he brings claims against Crow. "A complaint that only lists a defendant's name in the caption without alleging that the defendant was personally involved in the alleged misconduct fails to state a claim against that defendant." Camacho-Corona v. Douglas Cnty. Dep't of Corr., No. 8:12CV132, 2012 WL 3112020, at *3 (D. Neb. July 31, 2012); see also Krych v. Hvass, 83 F. App'x 854, 855 (8th Cir. 2003) (holding that a plaintiff "failed to state any claim whatsoever against [defendants] because he merely listed these individuals as defendants in his complaint and did not allege they were personally involved in the constitutional violations.").

Although pro se complaints must be liberally construed, Erickson, 551 U.S. at 94, "[j]udges are not like pigs, hunting for truffles buried [in the record.]" Murthy v. Missouri, 603 U.S. 43, 67 n.7 (2024) (alterations in original) (quoting Gross v. Cicero, 619 F.3d 697, 702 (7th Cir. 2010)).

Therefore, Boyd's claims against Crow are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Even if this Court were to allow Boyd to proceed with his claims against Crow, "[a] suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent." Stanko, 916 F.3d at 697 (quoting McMillian v. Monroe Cnty., 520 U.S. 781, 785 n.2 (1997)). As discussed above, claims against OSTDPS, and the Oglala Sioux Tribe, are barred by sovereign immunity. Therefore, Boyd's official capacity claims against Crow are also barred by sovereign immunity.

Boyd's individual capacity claims against Crow are dismissed as well, because he fails to allege facts that Crow was acting under color of state law, as required by § 1983. Stanko, 916 F.3d at 698. "[A]cting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law[.]" West v. Atkins, 487 U.S. 42, 49 (1988). As stated above, Boyd provides no factual allegations regarding Crow's actions, let alone how Crow exercised power possessed by virtue of state law. Therefore, Boyd fails to state a claim against Crow in his individual capacity.

    4.    **Claims Against Federal Public Defender's Office**

In his request for relief, Boyd states that he would like to "proceed with law suit against public defender Office Federal having me sign Destroy of fire Arm Double jeopard clause." Doc. 1 at 11 (spelling and grammar errors in original). But the Federal Public Defender's Office is not named as a defendant, as is required by the Federal Rules of Civil Procedure. See Fed. R. Civ. P.

10(a) ("The title of the complaint must name all the parties"). Therefore, this Court declines to address any claims Boyd intended to assert against the Federal Public Defender's Office.[2]

Many of Boyd's claims are ones he should address in his pending federal criminal case, including his apparent dissatisfaction with the Federal Public Defender for North and South Dakota and his apparent belief that he was subject to a warrantless search violative of the Fourth Amendment. Such claims generally are misplaced in a § 1983 case.

### III. Conclusion

Accordingly, it is

ORDERED that Boyd's motion for leave to proceed in forma pauperis, Doc. 2, is granted. It is further

ORDERED that the Clerk of Court send a copy of this order to the appropriate financial official at Boyd's institution. It is further

ORDERED that the institution having custody of Boyd is directed that whenever the amount in Boyd's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Boyd's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1) until the $350 filing fee is paid in full. It is further

ORDERED that Boyd's claims against the United States of America are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). It is further

---

[2] Even if Boyd's complaint did name the Federal Public Defender's Office in compliance with the Federal Rules, "a federal agency, such as [a Federal Public Defender's Office], is not a 'person' acting under color of state law and therefore cannot be subject to suit under 42 U.S.C. § 1983." Fuget v. Fed. Pub. Def. E. Dist. of Mo., No. 4:23-CV-1453-HEA, 2023 WL 8354805, at *3 (E.D. Mo. Dec. 1, 2023) (citing F.D.I.C. v. Meyer, 510 U.S. at 484–86). See also Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 812 (8th Cir. 2008) ("Bivens allows for a cause of action for damages against federal officials, not federal agencies, for certain constitutional violations.").

ORDERED that Boyd's claims against Pennington County Jail are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Boyd's claims against the OSTDPS are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2).

ORDERED that Boyd's claims against Crow are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

DATED November 4th, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE